# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# LAFAYETTE-OPELOUSAS DIVISION

| | |
|---|---|
| MARY ELLEN PASTOR | CIVIL ACTION NO. 08-CV-1254 |
| VS. | |
| | JUDGE MELANÇON |
| MICHAEL ASTRUE | |
| COMMISSIONER OF THE SOCIAL | MAGISTRATE JUDGE METHVIN |
| SECURITY ADMINISTRATION | |

## REPORT AND RECOMMENDATION

Before the court is an appeal of the Commissioner's finding of non-disability. Considering the administrative record, the briefs of the parties, and the applicable law, it is recommended that the Commissioner's decision be **AFFIRMED**.

### *Background*

Pastor is currently 48 years old. She has a 12th grade education and attended trade school to become a licensed practical nurse. She worked until 2003 as an LPN.

On May 15, 2006, Pastor applied for supplemental security income and disability benefits, alleging disability since August 29, 2003 due to polycystic ovarian syndrome, obesity, and back problems.[1] Pastor is approximately 5'3 inches tall and her weight has ranged as high as 350-plus pounds.

Pastor's application was denied on initial review, and after an administrative hearing conducted on January 24, 2008, the ALJ issued a decision on March 28, 2008, denying her claim

---

[1] Tr. 72-74, 90. Pastor met the insured status requirements of the Social Security Act through December 31, 2005. (Tr. 13).

on the basis that she could perform a limited range of light work. The Appeals Council denied review and Pastor timely filed this appeal.

## *Standard of Review*

The court's review is restricted under 42 U.S.C. §405(g) to two inquiries: (1) whether the Commissioner's decision is supported by substantial evidence in the record; and (2) whether the decision comports with relevant legal standards. Carey v. Apfel, 230 F.3d 131, 136 (5th Cir. 2000); Anthony v. Sullivan, 954 F.2d 289, 292 (5th Cir.1992); Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994).[2] In determining whether a claimant is capable of performing substantial gainful activity, the Secretary uses a five-step sequential procedure set forth in 20 C.F.R. §404.1520(b)-(f) (1992).[3]

---

[2] Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Carey, 230 F.3d at 136; Anthony, 954 F.2d at 292; Carrier v. Sullivan, 944 F.2d 243, 245 (5th Cir. 1991). The court may not reweigh the evidence in the record, nor substitute its judgment for that of the Commissioner, even if the preponderance of the evidence does not support the Commissioner's conclusion. Carey, 230 F.3d at 136; Johnson v. Bowen, 864 F.2d 340, 343 (5th Cir.1988). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the decision. Johnson, 864 F.2d at 343.

[3] The procedure is as follows:

1. If a person is engaged in substantial gainful activity, he will not be found disabled regardless of the medical findings.

2. A person who does not have a "severe impairment" will not be found to be disabled.

3. A person who meets the criteria in the list of impairments in Appendix 1 of the regulations will be considered disabled without consideration of vocational factors.

4. If a person can still perform his past work, he is not disabled.

5. If a person's impairment prevents him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed.

*ALJ's Findings*

The ALJ determined that Pastor's lumbar degenerative disease, obesity, and polycystic ovarian syndrome are severe impairments. At Step 5, relying on the testimony of a VE, the ALJ found that there were jobs existing in significant numbers which Pastor could perform, and therefore she was not disabled. After a review of the entire record and the briefs of the parties, and pursuant to 42 U.S.C. § 405(g), the undersigned concludes that the ALJ's findings and conclusions are supported by substantial evidence in the record.

*Findings and Conclusions*

**Administrative Hearing**

Pastor testified at her hearing that she has a driver's license but cannot drive for long distances.[4] She finished high school and obtained her license as a LPN.[5] According to Pastor, she can walk for 15 minutes; stand for 10 minutes; sit for 30 minutes; lift about 20 pounds; but cannot stoop or squat. Pastor testified that she does limited housework, including some cooking, makes her and her husband's bed, sweeps very little, cannot mop or vacuum, and does no yard work. Pastor watches television about 3 hours per day, takes a morning nap and then does "light things" like loading the dishwasher.[6] Her husband helps her with the laundry; and her children help with shopping. Pastor has trouble sleeping sometimes. She does her own personal hygiene.

---

[4] Tr. 22.

[5] Id.

[6] Tr. 25.

**Vocational Expert**

The VE testified that Pastor cannot perform her past work. When presented the hypothetical assuming a claimant of Pastor's education, age, and work experience who could perform light work but is limited to sitting no more than 30 minutes at a time, and standing no more than one hour at a time, the VE testified that there is work in the economy that Pastor can perform.

**Medical Evidence**

**University Medical Center** - Physicians at the University Medical Center in Lafayette, Louisiana treated Pastor numerous times for her hypothyroidism, back and side pain, swelling, obesity, and polycystic ovarian syndrome (POS) from 2003 to 2006.[7] POS is an endocrine dysfunction usually characterized by mild obesity, irregular menses and hirsutism.[8]

Pastor was seen at the UMC Emergency Room on March 15, 2003.[9] She complained of a pain level of 9/10 and swelling. She weighed 290 pounds. The progress notes show a past medical history of polycystic ovarian syndrome.

On May 23, 2003, Pastor was examined at the Gynecology Clinic for a poorly controlled thyroid.[10] She weighed 314 pounds. She complained of pain and that she had been bleeding for three weeks.

---

[7] The undersigned's review of the UMC records show that Pastor was seen numerous times, including but not limited to: 4/18/03, 5/23/03, 8/5/2003, 8/11/2003, 9/3/03, 9/12/03, 9/13/03, 9/24/03, 10/1/03, 3/8/04, 4/2/04, 8/15/04, 9/14/04, 10/14/04, 11/12/04, 12/14/04, 1/19/05, 3/19/05, 4/19/05, 5/24/05, 6/9/05, 6/22/05, 10/14/05, 11/30/05, 12/17/05, 6/9/06, 12/8/06.

[8] The Merck Manual of Diagnosis and Therapy 1934-36 (Mark H. Beers, M.D. and Robert Berkow, M.D., et al. Eds., 1999).

[9] Tr. 145.

[10] Tr. 142.

A June 9, 2003 radiology report showed that Pastor had a large right ovarian cyst.[11] On July 14, 2003, UMC Medicine Clinic progress notes show that Pastor was examined for whole body edema, low back pain, fatigue, weight gain, night sweats, and heat intolerance.[12]

Gaines was seen at UMC's Gynecology Clinic on August 1, 2003. She complained of painful periods. Her medications included Synthroid, used to treat hypothyroidism, and Glucophage, used to treat diabetes.[13]

A UMC Electrocardiographic Report that date showed her hospital diagnosis to be "Morbid Obesity." On August 3, 2003 she was seen at UMC with back pain at a level of 9/10 and vaginal bleeding.[14] Gaines complained of constant back pain relieved by resting when she went for a "pre-op" on August 5, 2003 for a possible hysterectomy.[15] On August 11, 2003, Pastor was seen for her hypothyroid. She was prescribed Glucophage, K-dur, used to treat low levels of potassium, Lasik, used to treat excessive swelling, Synthroid, and Vitamin E.[16]

Undated progress notes by Dr. Natel Montelaro, M.D. at the UMC Family Practice Center (FPC) show that he treated Pastor for back pain and problems with menses.[17] Dr. Montelaro diagnosed polycystic ovarian syndrome, mild-moderate hypertension, hypothyroidism, metromenorrhagia.

---

[11] Tr. 139.

[12] Tr. 131.

[13] Tr. 123.

[14] Tr. 156.

[15] Tr. 125, 126.

[16] Tr. 126.

[17] Tr. 220.

Pastor was seen on April 27, 2004 for vaginal bleeding.[18] Pastor was seen again on August 15, 2004 at the FPC.[19] She complained of level 10 pain in her right flank. Notes say that it was difficult assess masses/deformities because of the obesity of her abdomen. Her diagnosis was metromenorrhagia.

On January 21, 2005, radiology reports show that her right ovary had a cystic mass measuring 7 x 6 x 5 centimeters in the adnexa area.[20] Her uterus measured 10 x 3 x 4 centimeters. On July 7, 2005, Pastor underwent a partial salpingectomy, the excision of a fallopian tube.[21]

Pastor had problems with her incision and was given follow-up wound care. On October 2, 2005, she was seen for the wound. At that time, she complained of back pain and left sided pain.[22]

On November 30, 2005, Pastor presented at the Gynecology Clinic to follow up on her Provera therapy for irregular bleeding.[23] She weighed over three hundred pounds; her height was 5'2". Pastor complained of back pain at a level 8/10.[24]

---

[18] Tr. 160.

[19] Tr. 246.

[20] Tr. 129.

[21] Tr. 155.

[22] Tr. 233.

[23] Tr. 230.

[24] Id.

When seen at the UMC Gynecology Clinic on December 8, 2006, Pastor complained of worsening swelling, vaginal bleeding and a weight gain of 50 pounds during the previous 6 months.[25] Her weight was over 350 pounds.

**Consultative Examination**

Dr. Jesse P. McClelland, M.D., performed a consultative examination on August 4, 2006.[26] He found that Pastor could lift 10 pounds, walk 30 feet, stand 15 minutes, and sit for 20 minutes unimpaired. Pastor informed Dr. McClelland that she had applied for disability to help with her medications. He noted that she would have other problems as long as she was unable to afford her medications and that her weight problems then generally cause her back problems to be worse.

**Dr. Walter O. Moss Regional Medical Center**

Pastor was treated by the Moss Medical Center in 2007 for an abscess of the right breast, PCOS, hypothyroidism, and morbid obesity.[27]

*Analysis*

The primary issues before the court are (1) whether the ALJ committed legal error by failing to apply the regulations pertaining to obesity when analyzing Pastor's RFC, and (2) whether the ALJ's RFC assessment that Pastor can perform light work limited to sitting no more than 30 minutes at a time and standing no more than 1 hour at a time is supported by substantial evidence.

---

[25] Tr. 138.

[26] Tr. 269.

[27] Tr. 282-307.

### *The ALJ's Findings*

In the instant case, the ALJ concluded that Pastor's lumbar degenerative disease, obesity and POS were severe impairments.[28] He concluded:

> The claimant testified at the hearing. The claimant reported she weighed 346 pounds. She is able to drive for short distances. She went to trade school and became an LPN, but due to health issues she had to stop work in 2003. She cannot walk too far, maybe about fifteen minutes. She can stand ten minutes. She has lower back problems. She reports that she can lift twenty pounds. She sits in a recliner to relieve her back pain, and she can sit for thirty minutes at a time. Her chores are very limited and her husband does the majority of cooking. Her daughters help with the pots and pans and other dishes go in the dishwasher.
>
> The claimant reports she watches television about three hours out of a day. She naps during the day. She can take care of her personal needs. In the past she has had a lot of female problems.
>
> After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are consistent with the residual functional capacity assessment for the reasons explained below.
>
> As for the opinion evidence, the claimant suffers with degenerative changes in her lumbar spine. Her weight contributes to her back pain. She reported at the hearing that she can lift twenty pounds and sit for thirty minutes.
>
> The claimant complains of pain. . . The evidence of record does not support [her] allegations of total disability.[29]

## **Residual Functional Capacity**
### *Obesity*

The ALJ did not make a separate RFC analysis in his opinion, but his RFC assessment was incorporated in his hypothetical to the VE. The ALJ asked the VE to assume a claimant of

---

[28] Tr. 13.

[29] Tr. 5-8.

Pastor's age and education who could perform light work with the limitation that she could stand no more than one hour of time and could sit no more than 30 minutes at a time.

Pastor argues that the ALJ did not consider Pastor's obesity when analyzing her RFC. Pastor argues in particular that the ALJ erroneously failed to incorporate the opinion of the consulting examiner, Dr. McClelland, that Pastor was limited to standing 15 minutes and sitting 20 minutes at a time. Pastor also argues that the ALJ should have included the limitations that she needs to sit in a recliner for an hour a day to relieve her pain.

Social Security Ruling 02-1p requires that the ALJ consider a claimant's obesity in the sequential evaluation process to determine disability because it can cause a limitation of functioning. SSR 02-1P (2000 WL 628049).[30] Pastor has weighed over 300 pounds and she is 5"3" tall. It is abundantly clear that Pastor is morbidly obese and has been so for years. Her treating physicians as well as the consultative examiner have made this diagnosis.

The ruling recognizes that obesity can cause limitations in any of the exertional functions such as sitting, standing, walking, lifting carrying, pushing and pulling and may the ability to do postural functions such as climbing, balance, stooping and crouching. Obesity may affect the ability to carry out work on a sustained basis. The combined effects of obesity with other impairments may be greater than expected without obesity.

---

[30] The Commissioner will generally rely on the judgment of a claimant's treating physician to determine obesity. In the absence of the contrary evidence, a diagnosis of obesity by a treating physician or a consultative examiner will be accepted.

The undersigned finds that the ALJ's RFC assessment included the effects of her obesity and was supported by substantial evidence.[31]

Initially, because Pastor's own testimony showed that she can lift 20 pounds and sit for 30 minutes, the undersigned finds that the ALJ's decision to reject Dr. McClelland's determination that she can only lift 10 pounds and sit for 20 minutes is supported by substantial evidence.

The undersigned concludes that the ALJ's decision to reject Pastor's alleged limitations of standing 15 minutes and necessity to recline is supported by substantial evidence. Although Dr. McClelland opined that Pastor could only stand for 15 minutes, his other medical findings do not support this limitation. Particularly, Dr. McClelland found that Pastor ambulated well. Even though Pastor had some difficulty getting off and on the examining table and up and out of the chair, then undersigned notes that she was able to do so. Additionally, she did not need an assistive device, had 5/5 grip strength and intact fine and gross manipulation, and normal range of motion in the shoulder, elbow, wrist, knee, hip, ankle and cervical, and normal curvature of the spine. Even though Pastor had some limitation of flexion in her lumbar spine and degenerative disc disease; x-rays showed that her spine had normal curvature and uniform margins and disc spaces. These limitations do not suggest an inability to stand no more than 15 minutes or any requirement that Pastor recline daily for an hour.

In further support of the ALJ's findings, although UMC doctors treated Pastor many times for dysfunctional bleeding, back and side pain, morbid obesity; no UMC physician ever

---

[31] The ALJ is responsible for assessing the medical evidence and determining the claimant's residual functional capacity. Perez v. Heckler, 777 F.2d 298, 302 (5th Cir. 1985). The ultimate issue of disability is reserved to the Commissioner. The ALJ is entitled to determine the credibility of the examining physicians and medical experts and to weigh their opinions accordingly. Greenspan v. Shalala, 38 F.3d 232, 237 (5th Cir. 1994). "The ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion." Martinez v. Chater, 64 F.3d 172, 175-176 (5th Cir. 1995), quoting, Moore v. Sullivan, 919 F.2d 901, 905 (5th Cir. 1990).

limited Pastor's activities to standing for no more than 15 minutes and reclining for an hour a day or otherwise concluded she was disabled.

Pastor's own testimony shows that, even though she is obese, she can perform many daily activities, including driving short distances, getting up with her children before school, performing limited housework such as doing dishes, laundry and personal care.

It is clear the ALJ considered Pastor's obesity when he determined that she could no longer perform her past work as a LPN. He recognized that Pastor's weight contributed to her back pain. The ALJ weighed the medical evidence and concluded that Pastor perform light work limited to siting for 30 minutes and standing for an hour at a time. Based on the medical evidence of record, including Pastor's own testimony, the undersigned concludes that the ALJ's RFC assessment was based on substantial evidence.

### *Hypothetical to VE*

When Pastor's counsel posed the hypothetical to the VE including limitations of standing 15 minutes at a time and sit for an hour at a time, the VE found there were no jobs she could perform. However, because the undersigned concludes that the ALJ's RFC determination is supported by the record, the ALJ's hypothetical to the VE included all of Pastor's limitations. Accordingly, the undersigned finds that Pastor's argument that additional limitations should be included in the hypothetical is without merit.

### *Conclusion*

Considering the foregoing, it is recommended that the decision of the ALJ be **AFFIRMED**.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have ten (10) business days from receipt of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within ten (10) days after receipt of a copy of any objections or responses to the district judge at the time of filing.

Any judgment entered herewith will be a "final judgment" for purposes of the Equal Access to Justice Act (EAJA). See, <u>Richard v. Sullivan</u>, 955 F.2d 354 (5th Cir. 1992) and <u>Shalala v. Schaefer</u>, 509 U.S. 292 (1993).

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of receipt, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See <u>Douglass v. United Services Automobile Association</u>, 79 F.3d 1415 (5th Cir. 1996).**

Signed at Lafayette, Louisiana, on September 19, 2009.

Mildred E. Methvin
United States Magistrate Judge
800 Lafayette St., Suite 3500
Lafayette, Louisiana 70501
(337) 593-5140 (phone) 593-5155 (fax)